The next case this morning is 522-0764, People v. Newlin. Arguing for the appellant is Christopher Sealoff. Arguing for the appellee is John Barrett. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning. Good morning, your honors. Appreciate your patience. We've had some interesting cases so far and Justice Barbaros has been peppering everyone with questions, so it's going to take a little more time. Mr. Sealoff, are you ready to proceed? Yes, your honor. All right, you may do so. Your honors, counsel, may it please the court, assistant appellate defender Chris Sealoff on behalf of the defendant appellant Mr. Wayne Newlin. As an initial note, I believe the circuit court's error in denying Mr. Newlin's petition after an evidentiary hearing has been thoroughly litigated in the briefs and does not require much more argument today except to make two brief points. First, Mr. Newlin was clearly prejudiced by Lukowski's errors at trial. The state argues otherwise, but the fact remains that the suppression of Mr. Newlin's coerced confession along with Workman's testimony at trial would have effectively robbed the state of any direct evidence linking Mr. Newlin to the murder or at the very least would have injected considerable reasonable doubt that Mr. Newlin committed the murder where there no longer would have been confession and the state's star witness would have been directly discredited as only testifying to frame Mr. Newlin. Second, the state's arguments that Lukowski's performance was not deficient are weak at best because the suppression motion was a necessity based on Mr. Newlin not having slept for almost three full days before the confession and the police officer screaming at him for an hour in order to coerce that confession and additionally Michael Workman was sharing a cell with Mr. Newlin during trial, yet Lukowski failed to send his private investigator to ask him even a single question about his testimony that would have put all of the evidence on Michael Pease. Mr. Newlin will stand on the briefs for the remainder of this issue and ask this court to reverse the decision of the circuit court and remand his case for a new trial as it relates to the second issue. The majority of my time will then be spent focusing on post-conviction counsel's failure to not only comply with Rule 651c but to even understand what it required and a good way that I found to frame this case is that there are effectively four questions that have to be answered. First, what did counsel do wrong? Second, what should he have done and said? Third, why does the underlying merit of the 19 claims he abandoned for Mr. Newlin's pro se petition irrelevant? And fourth, what effect did his petition moving forward to an evidentiary hearing have? As to the first issue, what post-conviction counsel did wrong, he advanced claims in the amended petition that he admitted were frivolous and meritless. This is proven by the record where he said as much to the circuit court before the first evidentiary hearing and the order of the court's questions and counsel's answers are important on this point. The court first asked post-conviction counsel if he would argue all the claims that he adopted from Mr. Newlin's amended petition and counsel said he would only be arguing the three claims he specifically detailed in the amended petition and that the remaining 19 claims were adopted just for appeal purposes later. This statement standing on its own might lend support to the state's argument that counsel was simply advancing the three strongest claims and incorporating the 19 to avoid waiver. However, the next interchange immediately following this statement between the court and counsel puts the lie to this argument because the court asked counsel, quote, I'm not trying to put words in your mouth but just so I understand, you assess the other claims made by Mr. Newlin and didn't believe there was sufficient merit to proceed. Is that what you're telling me? To which counsel answered, judge, I think that would be an accurate statement. So by following this appeal purposes comment with a direct answer that the 19 claims he adopted were meritless, counsel affirmably stated that he was advancing claims in the amended petition that he knew to be meritless in violation of his duty under rule 651c. So what what would what would be the difference from him saying I'm not taking these 19 issues to this hearing versus having to say, well, judge, I'm going to file, I have to file now on another amended post-conviction petition where I dropped these off. Where is there an error there? So that actually leads to my second point is what is is the second question that I've sort of framed this argument as is what should counsel have done differently? And the answer is very simple. In the four years between Mr. Newland filed his pro se petition and the evidentiary hearings taking place, or at the very least in the two and a half years between the time post-conviction counsel filed his amended petition and the first evidentiary hearing took place, if he determined that those 19 claims that he incorporated for Mr. Newland's pro se petition were meritless, he should have simply filed an amended petition stating so. It's important to remember that rule 651c is about counsel's duty in shaping the petition, and so what rule 651c analysis requires is that we look at the petition, and here counsel adopted and incorporated those 19, the 22 claims from Mr. Newland's pro se petition, but only argued, specifically laid out three in his amended petition, and then at that hearing said actually those 19 are meritless. I just did it for appeal purposes later, basically saying that's appellate counsel's problem. I just did it because I wanted to avoid waiver, but actually they're meritless, so this is just a technical formality, and that's that's an important point here that rule 651c is not a technical formality. It's how we shape the contents of the petition and the contents of a petitioner's arguments moving forward. And so this is, again, this leads into the third point, why doesn't the merit of the underlying claims matter? The 19, the underlying merit of those 19 claims matter, and that's very simple. The Supreme Court in People versus Addison from 2023 said that it doesn't, and they said there that it's not just this isn't a new rule that we're announcing here in 2023. They said we have repeated, quoting from Addison here, paragraph 33, we have consistently declined the state's invitation to excuse non-compliance with the rule on the basis of harmless error. The Supreme Court in that case cited People versus Suarez from as far back as 2007, which itself was stating that this is a long-standing rule. If counsel does not comply with rule 651c by either by not meeting with the petitioner beforehand to determine their claims, not pursuing the record, not reviewing the record and becoming familiar with it, or not putting claims into appropriate legal form, it's a violation of rule 651c and it has to go back. And now rule 651c has to be complied with at some point in the proceedings. If there's no demonstration of compliance with rule 651c, then it needs to go back for compliance. It doesn't matter about the underlying merit of the claims because the Supreme Court has said we want the circuit court in the first instance to determine the merit of the claims or the post-conviction counsel, but it doesn't have to be in the petition format. And it's also important to note that even if prejudice were an issue here, there still would be prejudice because counsel's failure to incorporate the several ineffective assistance of appellate counsel claims that Mr. Nolan included in his pro se petition worked to create a procedural bar of waiver. The state argues that, I believe on page 8 of its brief here, the state of procedural default and counsel's amended petition resulted in the advancement of defendant's petition to a full third stage evidentiary hearing. But it's important to remember that there actually, we went from first stage to third stage. There was no second stage hearing. This didn't advance because of post-conviction counsel's outstanding petition or his ability to beat a state motion to dismiss. There was no state motion to dismiss. That's And if there had been a motion to dismiss, it is very possible and almost likely that it would have been granted specifically because counsel failed to appropriately amend Mr. Nolan's claims to put them into appropriate legal form. He abandoned 19 of them. And then for two of the ones that he actually did put forward, the suppression issue and the sufficiency of the evidence issue, those were actually barred by not including an ineffective assistance of appellate counsel argument because those issues could have been raised on direct appeal. So just all over, every time that counsel could have amended this into appropriate legal form, as was his duty under Rule 651c, he failed to do so. He disclaimed as meritless those claims whose evidence lied outside the record, only rephrased three of the 22 claims from the pro se petition, and even then he failed to put them into appropriate legal form by properly preserving them. And it's only because we skipped this second stage proceeding that we got to the evidentiary hearing. So that's why the fact that he had an evidentiary hearing is relevant and actually worked again in this is a rare instance where advancing to the third stage worked against the post-conviction petitioner because he didn't get the chance to have these errors caught at the second stage where we would have argued to your honors that we just have to go back for 651c compliance and then counsel could have put forward an appropriate petition that with claims that weren't barred and were properly supported by evidence and proper argument. So for those reasons and the reasons of briefing, we'd ask your honors to either remand for 651c compliance and the filing of a new amended petition and new counsel being appointed or to reverse outright the decision of the circuit court and grant Mr. Newell a new trial. And if your honors have any any questions, I'd be happy to answer them at this time. Thank you. Questions, Justice Bowie? No questions. Justice Barberas? No, thank you. All right, thank you. You'll be given an opportunity for rebuttal in a moment. Mr. Barbera, are you ready to proceed? I am and good morning, your honors. Counsel, may it please the court. Turning to the rule 651c argument, the main issue here with the defendant's argument is that it's fatally flawed because the defendant is conflating the standards that govern counsel at a third stage hearing from what's required of counsel under rule 651c at the second stage. Here, the comment that we had from counsel at the third stage hearing was consistent with the defendant's wishes at that time. So the court questioned counsel and about those three specific claims and whether those were the claims that they were going to focus on at the hearing. Defendant agreed, yes, those are the claims that I want focused on at the hearing. So first and foremost, defendant received a hearing on the strongest claims at the third stage. And then the other important aspect of what defense counsel was advancing was that that there was that these other 19 claims were abandoned. These were not abandoned claims. They were incorporated. They were not as strong as as the other claims, but the quote that he's looking at wasn't that the claims were frivolous or patently without merit. What counsel said was there wasn't sufficient merit to these claims in relation to the other claims that he argued. He focused on the stronger claims. The remaining 19 claims were incorporated. They were still there and they were not as strong as these other three claims that were presented. But they were not abandoned. Didn't the 651c certificate say that counsel had examined the proceedings of the guilty plea and this in fact was a jury trial? Doesn't that indicate facially deficient? Well, there's a facial deficiency there, but your honor, at the hearing what you want to look at is you want to look at counsel's conduct at the hearing. That you look at sort of the totality of the circumstances. So you think his conduct at the third stage hearing indicates that he understood this was a trial. He understood that there was there was a trial. He put on witness, workman, Scrivener's error when he said he examined the guilty plea. It was a Scrivener's error, absolutely your honor. Yep. So despite that facial deficiency, the overall performance of counsel was clear that he understood that this was a jury trial, that there were witnesses, that they were putting on this workman as a as a potential witness who should have been called allegedly. But yes, that that was a harmless error. But getting back to my initial points here on 651c, so at the second stage at what Addison is focusing on is a very narrow circumstance. What Addison is focusing on in that case is the fact that counsel had actually in in fact made the the claim worse and procedurally defaulted on that claim by failing to allege ineffective assistance of appellate counsel on a claim with respect to trial counsel's ineffectiveness. So defendant had initially raised the ineffectiveness of appellate counsel for not raising the effectiveness of trial counsel in the in the pro se petition. The amendment in Addison, counsel dropped the claims of ineffectiveness of appellate counsel and that was so egregious in that case that they didn't look at the merits. That was that was an absolute procedural default. It's a narrow circumstance that does not apply to this case. Here what you have are claims that happen to not be as strong as the three primary claims that were argued at the and by no means were they procedurally defaulted as was the case in Addison. So with respect to that first that first claim, the people would request that your honors affirm the decision and find that those claims were not abandoned, they were not claims. And then if we look if we look to the Supreme Court in 2024, the Huff case, the Supreme Court recognizes the difference between frivolous claims and weaker claims. And on paragraph 30 in that case, that indicates that when counsel believes the legal claim is weak, but there's no indication that counsel knew the claim was frivolous, there's no duty to withdraw that claim. There's no there's no duty to withdraw. It in effect shows that counsel in this case was focusing on honing the strongest claims and focusing on those claims at the hearing, which is a reasonable course for counsel to take. And circling back to to defense counsel's mention of the confession, Lukowski's failure to file a motion to suppress the confession, there was a detailed analysis of of the interrogation. There was a video that contradicted defendant's claims. Defendant had had claimed in the post-conviction petition and then stated on the record at the hearing that he was denied his Miranda rights, that he had requested an attorney, that he was experiencing health issues during that interrogation. And the trial court went through, viewed the video and then there were detailed findings that there was no Miranda or there was no request for an attorney, that defendant had in fact received his Miranda warnings and had signed Miranda waiver on on video. So defendant's credibility was pretty much eradicated at that point and the trial court found that this claim with respect to the confession and the voluntariness of the confession is just not credible. And the court's conclusions were based on the totality of the circumstances. So the argument that the detective's tactics were somehow unduly coercive, well there was intense questioning, but that's a far cry from unduly coercive. Defendant wasn't being browbeaten into, you have to confess, you need to, you know, for hours and hours and hours of just incessant, you know, demands the defendant confess. This wasn't that kind of a case. We had defendant given regular breaks, there were meal breaks, he was able to sleep, there were intense questions at times, but at no time was defendant ever threatened that he had to confess. So when we're looking at the totality of the circumstances here, there's, you know, the court's decision is looked at at the third stage for manifest error and we don't see any manifest error with respect to to the confession. All the court's findings are supported under the record and by the video evidence and then through just the court's analysis of the defendant's questioning at the hearing, at the evidentiary hearing, and lack of  So that is where I will leave that. I will field any questions, any further questions that you your honors may have for me at this time. Mr. Smith, any questions? Yeah, I don't think counsel you, maybe you did touch on it, but the two issues were the motion to suppress and then this finding this witness, I think Workman's his name, and again, that was fully fleshed out during that hearing. The trial court made, you know, specific explicit rulings on what, you know, again, we read so many of these, sometimes facts get a little jumbled. Basically, if I remember, basically the trial judge or the post-conviction judge said that the attorney made attempts to find Workman, you know, he did try to do these things and had issues and so made really specific findings, correct? That's correct, that's correct, and Workman's testimony did not directly refute some of the the points of similarity between defendant's confession and Pease's testimony. So there were, for instance, text messages referring to lemons or lemon pie as a reference to the murder. The tractor that was used to transport the body, defendant was seen by the victim's brother the day before the murder repairing the tractor. The very next day, Pease is driving the tractor. So there's clearly multiple pieces of evidence working together to show the relationship between these two guys as having orchestrated and brought this murder about together. So yeah, the trial courts or the post-conviction courts findings are fully supported by the record and there was no manifest error in this case. Thank you, counsel. Justice Barbero, any questions? No, thank you. All right, thank you. Mr. Sigloff, rebuttal? I'm still on mute. Mr. Sigloff? Apologies, yes, your honor. Briefly, I just have two points really on the 651C issue and then one sort of general point on the evidentiary hearing issue. The first issue with the first point on the 651C issue is that the state argues Mr. Nolan is conflating the second stage standard with third stage standard and we're not. 651C requires compliance at some point in the record. We cited that in the brief, but the point is that if 651C is never complied with, then it requires a remand for compliance. 651C compliance is mandatory and if the record shows either that there was no 651, no valid certificate, or that the presumption of compliance that the certificate creates was rebutted by the record, then it needs to go back. In this case, counsel failed to appropriately shape Mr. Nolan's claims into appropriate legal form, which leads into my second point, your honors, on this issue that the state's and sort of my second point on this issue and my final issue with the evidentiary issue, the state's framing of the facts of this case is really frustratingly selective. The idea that post-conviction counsel was saying, no, no, no, no, when he said meritless, he didn't mean meritless. What he meant was meritless specifically for the purposes of this third stage proceeding and that's just not true. Again, as we noted early on, I noted early on very early on in my opening remarks here, the order of those statements is important. If he had just said the appeal purposes comment without the court asking specifically, are you saying these claims are meritless, then perhaps maybe the state's argument would hold water, but the court asked, you know, are you arguing these 19 claims? Judge, I put those in for appeal purposes. Okay, are you saying they're meritless? Yes, that would be correct, Judge. I don't know how you get anything else out of that statement other than counsel was saying these are meritless claims. I don't believe in them, but I'm putting them in here because a fellow counsel maybe can do something later. By the way, I can't because they weren't argued. They weren't put into appropriate legal form and counsel is actively disclaiming them. That's the whole point of this. His job under 651c is to either limit those claims and say these are the three I believe have merit. That's why I'm putting them in the petition where I believe all of these have merit, and then he could have just said at the evidentiary hearing, Judge, I'm not saying they're meritless. I'm saying these are the three strongest. These are three I can find the most evidence for. These are the three I think it's best to spend my time on. He didn't. He said, I think it's correct, Judge, when the judge said they're meritless. That's the whole ballgame. And finally, as for the evidentiary hearing, the state's just not correct about lack of coercion. I'm sure at no point was he beat over the head with a hammer or anything or waterboarded or physically tortured at any point, at least not in the sense of police directly putting their hands on him, but he'd been up for three full days. He told them that going in. They kept him in a straight back chair for 18 hours. As we much restorative power you can expect out of a cup of police station coffee and a donut. The fact that he'd been up for all this time, they're screaming at him. They're calling him names. They're saying that he's a coward, that he's trying to put all the blame on this guy, and he just needs to open up. All of these factors combine to be coercion. And finally, the state talks about the the findings that the court made about workmen being difficult to find. Those findings were manifestly erroneous. As we pointed out in the brief, the difference between being able to find somebody 10 years later after they've moved to another state, moved on with their life, and have started a new job, versus being able to find them at the time that they are sharing a cell with your client, and you have a private investigator hired by the court to help you find this information out, is so different. It has to be not worth mentioning except to say that it's not an equal comparison. That's why the court's findings on the issue of workman's testimony were manifestly erroneous. It didn't matter he was hard to find 10 years later. It mattered that he was very easy to find at the time of Mr. Nolan's trial, and the cost he did nothing to do so. So for those reasons, as we said, we request that this either go back for 651C compliance or an outright reversal in our new trial. And if your honors have any further questions, I'd be happy to answer them. Questions, Justice Bowie? No questions, thank you. Questions, Justice Barberos? None, thanks. All right, thank you. Appreciate your arguments in the briefs. We'll consider the briefs and the arguments made today. We will take the matter under advisement and issue a decision in due course.